OPINION OF THE COURT
Kim Dollard, J.
Plaintiff brings this action in order to recover a $2,000 fee she paid to defendant Together Member Service, a dating service. Plaintiff represents herself in this matter and the defen *231 dant is represented by counsel. Trial was held on March 17, 2009.
Plaintiff testified in her own behalf. She states that she joined Together in July 2008. She submits a copy of her contract together with an addendum and Together membership “Key to Success” as well as other referral documents she later received from defendant. Plaintiff claims that she was given a referral and she called the contact. They spoke on the phone and agreed to meet but he never called back as planned. This same thing happened two more times with subsequent contacts. Plaintiff stated that her daughter complained on her behalf in September or October of 2008. She tried to cancel the contract but was told that there were no cancellations and no refunds available to her. She wants her money back because the three referrals never resulted in any meetings and she has gotten no referrals since the last one.
On cross-examination, plaintiff indicated that she did not understand paragraph one on the contract which indicates “no provision for refunds, recisions or cancellations of any kind.” She restates that she got a referral on July 24, 2008 and the gentleman never called back.
Jill Grossman, plaintiffs enrollment counselor at Together, testified on behalf of the defendant by whom she has been employed for 15 years. She indicated the circumstances of the day plaintiff enrolled in Together. She explained that the contract is still in effect because it expires only after the member has been referred to five individuals and is not subject to any time limitation. In support of her position, Ms. Grossman submits an American Express receipt which indicates “No Refunds.”
At first blush, the provisions of paragraph one of the contract and the American Express receipt indicating “No Refunds” are violative of the applicable laws herein. The court also finds that such provision violates public policy, as well.
The within matter is governed by General Business Law § 394-c,'1 commonly known as the Dating Service Law, which reads in relevant part, as follows:
“2. No contract for social referral service shall *232 require payment by the purchaser of such service of a cash price in excess of one thousand dollars. Services to be rendered to the purchaser under the contract may extend over a period not to exceed two years from the date the contract is entered into.
“3. Every contract for social referral service which requires payment by the purchaser of such service of a total amount in excess of twenty-five dollars shall provide that the seller of such service must furnish to the purchaser a specified certain number of social referrals per month.
“4. Every contract for social referral service which requires payment by the purchaser of such service of a total amount in excess of twenty-five dollars shall provide that in the event that the seller of such service does not furnish to the purchaser the specified certain number of social referrals for two or more successive months the purchaser shall have the option to cancel the contract and to receive a refund of all monies paid pursuant to the cancelled contract with the exception that the seller shall be entitled to retain as a cancellation fee fifteen per cent of the cash price or a pro rata amount for the number of referrals furnished to the purchaser, whichever is greater. Every such contract shall set forth in the contract and in the bill of rights the manner in which such services provider determines its cancellation fee pursuant to this subdivision . . . “7. (a) Every contract for social referral service shall provide that such contract may be cancelled without a cancellation fee within three business days after the date of receipt by the buyer of a copy of the written contract.
“(b) In every social referral service sale, the seller shall furnish to the buyer a fully completed copy of the contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in the immediate proximity to the space reserved in the contract for the signature of the buyer and in not less than ten-point bold face type, a statement in substantially the following form:
*233 “YOU, THE BUYER, MAY CANCEL THIS CONTRACT WITHOUT ANY CANCELLATION FEE WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.
“(c) Notice of cancellation shall be delivered by certified or registered United States mail at the address specified in the contract.
“(d) At the time the buyer signs the social referral service contract, a completed form in duplicate, captioned ‘NOTICE OF CANCELLATION’, which shall be attached to the contract and easily detachable, and which shall contain in not less than ten-point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract:
“NOTICE OF CANCELLATION
“(enter date of transaction)
“(Date)
“YOU MAY CANCEL THIS CONTRACT, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT BY MAILING THIS SIGNED AND DATED NOTICE OF CANCELLATION BY CERTIFIED OR REGISTERED UNITED STATES MAIL TO THE SELLER AT THE ADDRESS SPECIFIED HEREIN. IF YOU CANCEL, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT WILL BE RETURNED WITHIN TEN (10) BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE. TO CANCEL THIS TRANSACTION, MAIL BY CERTIFIED OR REGISTERED UNITED STATES MAIL A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE TO:
“(Name of Seller) NOT LATER THAN
“(Address of Seller)
(Date)
*234 “(e) In every social referral service sale or renewal, the seller shall provide each purchaser with a clear and conspicuous, separate written notice, to be known as the 'Dating Service Consumer Bill of Rights.’ ”
The agreement entered into between the parties does not comply with the above mandates. Specifically, in the case at bar, plaintiff paid a membership fee in excess of the allowable amount. (General Business Law § 394-c [2].) Additionally, the services to be provided to her were open-ended as opposed to having a two-year period (id,.). While plaintiff was told she would get five referrals, the number of referrals was not to be provided to her on a monthly basis, as required (§ 394-c [3]). And, since Together did not provide a specified number of referrals monthly, the maximum allowable charge was $25. Clearly, plaintiff was grossly overcharged. (See also Doe v Great Expectations, 10 Misc 3d 618 [2005].)
It could also be argued that plaintiff received no referrals, and that defendant failed to live up to the terms of its own contract. Based upon her credible testimony, plaintiff indicated that while she spoke to three men over the telephone, none of these “introductions” resulted in a face-to-face meeting or date. Plaintiff relayed that each man had practically the same story, and while each promised they would get back to her, they never did. It is understandable that plaintiff felt frustrated and somewhat taken advantage of by Together. And the court is of the opinion that this is exactly the reason the mandates of General Business Law § 394-c are so specific and restrictive. Given the nature of the social service referral business, which involves affairs of the heart, it is easy to see how individuals might be taken advantage of.
As stated previously, there was no provision in the contract for cancellation or refund of any type (§ 394-c [4], [7] [a], [b]). Finally, plaintiff was not provided with a “Dating Service Consumer Bill of Rights.” (Subd [7] [e].) Rather, she received a “Key To Success” document outlining appropriate behavior as recommended by Together to ensure a pleasant and successful experience.
Plaintiff failed to receive the services to which she was entitled and for which she had paid for, and defendant wholly violated the applicable laws herein.
*235 Accordingly, judgment for the plaintiff in the amount of $2,000 with interest from July 15, 2008.

 Even though the contract was entered into in a New Jersey office of defendant, the court finds that such office is one of their “tri-state offices.” Further, plaintiff is a New York resident and the provisions of the contract relating to “Governing Law” apply only to New Jersey residents. Therefore the court finds this contract is governed by the laws of the State of New York.